## LOSQUADRO COAL CORPORATION v. RUBEL CORPORATION.

### Civ. No. 11492.

United States District Court
D. New Jersey.

Oct. 28, 1949.

Morris E. Barison, Jersey City, N.J., by Frederick Riethmuller, Jersey City, N.J., of counsel, for plaintiffs.

Kanter & Kanter, Newark, N.J., by Elias A. Kanter, Newark, N.J., for defendant.

FAKE, Chief Judge.

At the close of the trial the Court dictated findings of fact on the record. I repeat them here:

The Court (Orally, at conclusion of testimony):

"1. This action was originally instituted in the New Jersey Supreme Court as a declaratory judgment proceeding under the State statute and thereafter removed to this Court because of diversity of citizenship. No question is raised as to the jurisdiction of the Court.

"2. The action seeks a declaratory judgment based upon the extent and meaning of a certain contract in writing between the parties to this suit dated August 1, 1947. It appears that the defendant herein, Rubel Corporation, was and for some time had been engaged in the manufacture, sale, and distribution of ice in the States of New York and New Jersey, and the party of the second part was the owner and operator of a coal, oil and ice business located on Park Avenue, Weehawken, and

also on New York Avenue, Jersey City. The Losquadro Coal Corporation, desiring to sell its business to the Rubel Corporation, entered into the contract above mentioned, making the sale for the sum of $2250 and coupling the sale with a covenant in restraint of trade. The issues here are involved with the construction to be placed upon the restraint, and plaintiffs attack its validity on the ground that the territory covered is unreasonable in its extent.

"3. The covenant prohibits the vendor, Losquadro Coal Corporation, and its officers from entering into the ice business in any way, directly or indirectly, for a period of five years anywhere within the State of New Jersey, as will more fully appear by reference to the language of the contract, marked Exhibit D-1 herein.

"4. It is contended by the defendant that plaintiffs are guilty of a breach of the terms of the contract in that they did engage in the ice business within the County and State covered, and in this connection evidence was adduced before the Court clearly indicating and proving that a son of Gerardo Losquadro was presented with an automobile truck shortly after the contract was signed and that thereafter this son, who was not one of the parties covered by the terms of the contract, actually did enter into the ice business in a general way, and that he used the truck which his father had given him, in the ice business.

"I do not find as a fact that any of the Losquadro Coal Corporation's agents or the corporation itself engaged in the ice business in conflict with the agreement, and it is my view that the son, not being covered by this contract, was free from its effect and could lawfully engage as he did in the ice business. There is nothing in the case that indicates that when the father gave the boy the truck, it was with the understanding that he would use it in the ice business. True, there might be an implication to that effect but there is not a scintilla of evidence indicating that the father gave the son the truck for the purpose of allowing the son to become a competitor of the Rubel Corporation. The testimony of the son himself, and the fact

that there may have been a bill on the stationery of the Losquadro Coal Corporation on the desk of a third party, to-wit, Frank Mongiello & Sons, is not sufficiently connected to the Losquadro interests to find that they either directly or indirectly caused a violation of the contract.

"I therefore conclude that in so far as plaintiff's conduct is concerned as bearing upon their violation of the terms of the contract, there was no violation by Losquadro or any of those associates who are parties to the agreement.

"This leaves open only the validity of the agreement bearing upon the concrete question as to whether or not it was against public policy because it covers the entire State and extends beyond the territory in which either of the parties to the agreement had been functioning."

The issue raised in the last paragraph above was reserved for briefs and further study by the Court.

In the case of Schultz v. Johnson, 110 N.J.Eq. 566, 160 A. 379, Vice Chancellor Leaming said: "The obligations arising from covenants of this nature have been considered by our courts so frequently that almost every aspect of the subject has been determined. A review of the cases seems unnecessary." So here I will not burden the record further than to say: It is well established in New Jersey that a covenant, such as that in the instant case, is void because its restriction goes "beyond the territory in which the business which was sold was transacted at the time of the sale," and "beyond any extention of that territory, by expansion of the business sold, as might have been reasonably contemplated by the parties, at the time of the sale."

Many cases are cited in the plaintiff's brief, and may be found in the digests and reported opinions. They all tend to the conclusion that the covenant here is void.

### Conclusions of Law

The covenant being void, no action can be predicated thereon and the contract not being susceptible to division is void in its entirety as in restraint of trade and against

public policy. As to the effect of this see the last paragraph in Reynolds Metals Co. v. Metals Disintegrating Co., 3 Cir., 176 F.2d 90, at page 92.

An order may be entered in conformity herewith.